IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00216-NYW

MICHAEL S. HINDS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

Magistrate Judge Nina Y. Wang

    This civil action arises under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401–33 and 1381–83(c) for review of the Commissioner of Social Security Administration's ("Commissioner" or "Defendant") final decision denying Plaintiff Michael S. Hinds' ("Plaintiff" or "Mr. Hinds") applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to the Parties' consent [#12],[1] this civil action was assigned to this Magistrate Judge for a decision on the merits. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. After carefully considering the Parties' briefing [#15; #16; #17], the entire case file, the Administrative Record, and the applicable case law, this court respectfully **AFFIRMS** the Commissioner's decision.

---

[1] For consistency and ease of reference, this Order utilizes the docket number assigned by the Electronic Court Filing ("ECF") system for its citations to the court file, using the convention [#___]. For the Administrative Record, the court refers to ECF docket number, but the page number associated with the Record, which is found in the bottom right-hand corner of the page. For documents outside of the Administrative Record, the court refers to the ECF docket number and the page number assigned in the top header by the ECF system.

## PROCEDURAL HISTORY

This case arises from Plaintiff's applications for DIB and SSI filed on or about March 3, 2017. [#11-2 at 14; #11-5 at 173-81]. Mr. Hinds is homeless and has been at least since 2011. *See* [#11-2 at 41; #17 at 2; #11-5 at 174]. He is 51 years old, single, and has completed two years of college education. *See* [#11-2 at 48]. In the decade before he alleged that he became disabled, Plaintiff worked various manual labor jobs, including carpentry, plumbing, electrical, and apartment maintenance work. *See* [#11-2 at 52-54; #11-5 at 182-84]. Plaintiff alleges that he has been disabled since December 1, 2015, due to a combination of back pain and cluster headaches, and that he has not worked since 2015. *See* [#11-2 at 35, 45-46].

Plaintiff's applications were denied on May 26, 2017. [#11-4 at 90-97]. Plaintiff timely filed a request for a hearing before an Administrative Law Judge on May 30, 2017. [*Id.* at 110]. Administrative Law Judge Cynthia K. Hale (the "ALJ") convened a hearing on September 18, 2017. [#11-2 at 32].

At the hearing, Mr. Hinds testified that his back pain is chiefly responsible for his inability to work. *See* [*id.* at 48]. He testified that, starting at the end of the year in 2015, his back pain was so severe that he could not move his legs. *See* [*Id.* at 46]. Currently, Mr. Hinds maintains that he is in constant pain, that sitting or standing in one position for too long will aggravate the pain, and that to prevent aggravation he must alternate between sitting and standing often within an hour. *See* [*id.* at 40-42]. Plaintiff testified that at times when he tries to walk his extremities become numb. [*Id.* at 36].

In addition to the back pain, Plaintiff testified that he experiences cluster headaches which prevent him from working. *See* [*id.* at 36]. The cluster headaches occur about twice a year and appear to be triggered by seasonal changes in the weather, but they do not have any other environmental triggers such as light or sound. [*Id.* at 44-45]. At their worst, the cluster headaches

leave Mr. Hinds in such pain as to render him incapacitated. *See* [*id.* at 36]. Plaintiff alleges that he has tried to work on and off since 2015, but is unable to maintain a job because of his pain. [*Id.* at 38-41].

A Vocational Expert (the "VE") also testified at the hearing. *See* [*Id.* at 54-58]. Acknowledging that a person in the following hypothetical would likely be unable to perform Mr. Hinds' past work, the ALJ asked the VE to identify if other types of employment exists which might be available to a such a person who is (1) limited to light work, (2) would need to alternate between standing and sitting every 30 minutes while continuing to work, (3) would only occasionally be able to stoop, crouch, kneel or crawl, and (4) would need to avoid exposure to hazards such as moving machinery and unprotected heights. [*Id.* at 55]. The VE testified that such a person might find work as an officer helper, router, or mail clerk. *See* [*Id.* at 56]. The VE testified that further limitations, such as the need to take one fifteen-minute break a day, a need either to leave work early or have to be absent for more than two days a month, or a need to be off-task for twenty percent of the day would rule out all competitive employment. *See* [*Id.*]

On October 3, 2017, the ALJ issued a decision finding Mr. Hinds not disabled under the Act. *See* [#11-2 at 25]. Plaintiff requested Appeal Council review of the ALJ's decision, which the Appeals Council denied, rendering the ALJ's decision the final decision of the Commissioner. [*Id.* at 1-5]. Plaintiff sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on January 26, 2018, invoking this court's jurisdiction to review the Commissioner's final decision under 42 U.S.C. §1383(c)(3).

**STANDARD OF REVIEW**

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the

record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *accord Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) ("[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." (internal citation omitted)). The court may not reverse an ALJ simply because she may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). However, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court may not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted).

## ANALYSIS

### I. The ALJ's Decision

An individual is eligible for DIB benefits under the Act if she is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). SSI is available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act. 42 U.S.C. § 1382. An individual is determined to be under a disability only if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy. . . ." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002). Additionally, the claimant must prove she was disabled prior to her date last insured. *Flaherty*, 515 F.3d at 1069.

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. § 404.1520(a)(4)(v). *See also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. Step one determines whether the claimant is engaged in substantial gainful activity; if so, disability benefits are denied. *Id.* Step two considers "whether the claimant has a medically severe impairment or combination of impairments," as governed by the Secretary's severity regulations. *Id.*; *see also* 20 C.F.R. § 404.1520(e). If the claimant is unable to show that her impairments would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. If, however, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to Step 3. *Williams*, 844 F.2d at 750. Step three "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. § 404.1520(d). *Id.* At step four of the evaluation process, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which defines the maximum amount of work the claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751; *see also id.* at 751–52 (explaining the decision maker must consider both the claimant's exertional and nonexertional limitations). The

ALJ compares the RFC to the claimant's past relevant work to determine whether the claimant can resume such work. *See Barnes v. Colvin*, 614 F. App'x 940, 943 (10th Cir. 2015) (citation omitted). "The claimant bears the burden of proof through step four of the analysis." *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account the claimant's RFC, age, education, and work experience. *Neilson*, 992 F.2d at 1120. The Commissioner can meet her burden by the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99, 1101 (9th Cir. 1999).

The ALJ found that Mr. Hinds met the insured status requirements through June 30, 2018, and had not engaged in substantial gainful activity since December 1, 2015. [#11-2 at 16]. At step two, the ALJ determined Mr. Hinds had the following severe impairments: cluster headaches and degenerative disc disease of the lumbar spine. [*Id.*]. Additionally, at step two, the ALJ determined that Mr. Hinds' pre-diabetes did not reach the level of severe since the illness does not "significantly limit the claimant's physical or mental ability to do basic work." *Id.* At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). [*Id.* at 17]. The ALJ then determined Plaintiff had the RFC to perform light work subject to a few limitations. [*Id.*]. At step four, the ALJ concluded that Mr. Hinds is unable to perform any past relevant work. [*Id.* at 23]. At step five, considering Mr. Hinds' age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as an office helper, router, or mail clerk. [*Id.* at 23-25.].

On appeal, Mr. Hinds argues the ALJ erred at step three in concluding that his severe impairments do not meet or medically equal the criteria of any impairment listed in the Social Security Regulations, specifically, listing 1.04 *Disorders of the spine*, and erred in determining his RFC because the ALJ failed to properly account for his severe impairments. The court considers these challenges below.

## II. Step Three

Step three of the evaluation process requires the ALJ to determine whether a claimant has an impairment that meets or medically equals any listing found at 20 C.F.R., Pt. 404, Subpt. P, App'x 1 (§§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). The severity of the impairments found in these listings precludes any substantial gainful activity. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). A claimant meets a listed impairment if his ailments satisfy all of the listing's criteria, 20 C.F.R. § 416.925(c)(3), or if his ailments are "at least equal in severity and duration to the criteria of any listed impairment," *id.* §§ 416.926(a). *See also Davidson v. Sec'y of Health and Human Servs.*, 912 F.2d 1246, 1251–1252 (10th Cir. 1990).

Plaintiff argues that the ALJ erred at step three in concluding that his degenerative disk disease of the lumbar spine does not meet, equal, or exceed the criteria for listing 1.04, "Disorders of the spine resulting in compromise of a nerve root or the spinal cord." 20 C.F.R Part 404, Subpart P, Appendix 1, Listing 1.04. In order to establish a spinal disorder by meeting, equaling, or exceeding the criteria for listing, an ALJ must find:

    A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
          or
    B.    Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe

burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
or
C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

*Id.*

Plaintiff contends that he is entitled to remand because the ALJ failed to account for substantial medical evidence in reaching her conclusion that Plaintiff's degenerative disk disease does not meet or equal Listing 1.04. *See* [#15 at 5-7; #17 at 2-3]. Plaintiff points to the ALJ's statement that he had not reported radiating pain and that his straight leg tests had been consistently negative, arguing that the record shows that Mr. Hinds "repeatedly reported" back pain that "affects his extremities." *See* [#15 at 5]. Plaintiff further argues that the ALJ reached her allegedly erroneous conclusion because she overlooked the evidence of a positive straight leg test in the record, implying that the existence of the test in the record contradicts the ALJ's finding that Mr. Hinds' straight leg tests "have been consistently negative." [#11-2 at 17]; *see also* [#15 at 5]. Plaintiff also contends that the ALJ erred by failing to provide an explanation for her placing greater weight on some medical opinions and reports in the record and apparently disregarding others. *See* [#15 at 5-7].

The Commissioner responds that, even if the Plaintiff did report radiating pain and had a positive straight-leg test, the record still shows that he does not meet all of the "specified medical criteria" in Listing 1.04. [#16 at 6-8]. Defendant argues that since Mr. Hinds does not meet all of the criteria in the Listing and the evidence as a whole supports the AJL's decision, the decision must be affirmed. *See* [*id.*]. For the following reasons, I respectfully agree with the Commissioner.

8

### A. Medical Evidence

The Social Security Administration has provided that the agency's policy "requires that for a disorder of the spine to meet listing 1.04A at step three …, the claimant must establish the simultaneous presence of all the medical criteria in paragraph A." SSAR 15-1(4), 2015 WL 5697481 (Sept. 23, 2015). Once the level of severity is determined, the claimant must show that it "continued, or is expected to continue, for a continuous period of at least 12 months." *Id.*. Plaintiff asserts that his degenerative disk disease of the lumbar spine meets, equals, or exceeds the criteria for Listing 1.04A, which requires an ALJ to find "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R Part 404, Subpart P, Appendix 1, Listing 1.04 A. (emphasis added). While Plaintiff is correct that the record includes his reports of radiating pain that the ALJ did not discuss, this oversight does not alter the outcome, because the ALJ's consideration of the evidence as to the rest of the criteria for the Listing reasonably allowed her to conclude that Mr. Hinds' impairment did not meet or medically equal Listing 1.04.

The ALJ's conclusion at step three was supported in part by her finding that Mr. Hinds "has not reported radiating pain and his straight leg raise tests have consistently been negative." [#11-2 at 17]. The record, however, shows that Mr. Hinds did repeatedly report radiating pain. *See* [#11-7 at 276 ("Pain is radiated to the occasional paresthesias B LEs."); #11-8 at 374 (Review of neurological system indicates Plaintiff reported "Dizziness, extremity weakness, numbness in extremity."); #11-8 at 402 ("There is numbness in the LL extr[e]mities.")]. But the medical record also shows that Mr. Hinds' straight leg tests have been consistently negative, with one positive

straight leg test that occurred in November 2011. [#11-8 at 402]. The existence of this lone positive straight leg test in the record does not negate the ALJ's assertion that Plaintiff's straight-leg tests were *consistently* negative, however, given that all of the other straight leg tests accounted for in the record are negative. [#11-7 at 279, 299; #11-8 at 409]. In fact, all of the negative straight leg tests—that is all of them excluding the November 2011 test— occurred *after* the November 2011 test, with the most recent test having occurred on April 18, 2017. [#11-7 at 299].

To be considered disabled under Listing 1.04A, the Social Security Administration has provided that a claimant must establish that each element is present simultaneously and must continue or be expected to continue for a continuous period of twelve months. "Listing 1.04A uses the conjunction 'and' when enumerating the medical criteria in order to establish that the entire set of criteria must be present at the same time on examination." SSAR 15-1(4), 2015 WL 5697481 at *4. The agency issued its ruling following the Fourth Circuit Court of Appeals' decision in *Radford v. Colvin*, where the claimant showed the presence of every element listed in 1.04A over a five-year period, but did not show that they existed simultaneously for any twelve-month span. *Radford v. Colvin*, 734 F.3d 288, 293 (4th Cir. 2013). The Fourth Circuit Court of Appeals reversed the ALJ's denial of benefits, holding that a claimant meets 1.04A if he can show "that each of the symptoms are present, and that the claimant suffered or can be expected to suffer from nerve root compression continuously for at least 12 months." *Id*. at 294. In an Acquiescence Ruling on the matter, the Agency stated that it's "policy requires that for a disorder of the spine to meet listing 1.04A at step three… *the claimant must establish the simultaneous presence of all the medical criteria in paragraph A*." SSAR 15-1(4), 2015 WL 5697481 at *5 (emphasis added).

In this case the negative straight-leg tests in the record support the ALJ's finding that Mr. Hinds did not meet all of the criteria for Listing 1.04A as it is impossible to meet all of the elements

10

simultaneously for a period of at least twelve months without consistent positive straight leg tests. In the event that an ALJ improperly reads the evidence but "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way," the ALJ's error will be considered harmless and their decision must be affirmed. *Allen v. Barnhart* 357 F.39 1140, 1145 (10th Cir. 2004). The ALJ's mistake as to the fact that Mr. Hinds reported radiating pain constitutes harmless error since his impairment cannot meet Listing 1.04A regardless of the presence radiating pain. Since the evidence, when considered in its totality, is in accord with the ALJ's conclusion, her decision that Mr. Hinds' impairments do not meet or medically equal Listing 1.04 must be affirmed. *Ellison*, 929 F.2d at 536 (holding that when the evidence as a whole supports the ALJ's findings, their decision must be affirmed).

The Plaintiff also contends that the ALJ failed to consider contradictory medical opinions and failed to give adequate reasons for weighing one decision over another. The court now reviews the ALJ's consideration of the medical opinions in the record.

### B. Medical Opinion

In general, the opinion of an examining physician is entitled to more weight than the opinion of a non-examining source. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); 20 C.F.R. § 416.927(c)(1). The opinion of an examining source is not "dismissible," *see Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012), and may be dismissed or discounted only upon an examination of the factors provided in the regulations and "specific, legitimate reasons for rejecting it…" *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). *See also* 20 C.F.R. § 416.927(c)(2)(i)–(ii), (c)(3)–(c)(6) (listing factors the ALJ must consider when weighing medical source opinions). The ALJ should discuss the evidence in the record when she explains her step three findings. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). However, "an ALJ is not

required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Id.* at 1009-10.

In this case the ALJ afforded significant weight to Dr. Phelps' opinion "and slightly lesser weight to Dr. Ginsburg's medical opinion" because Dr. Phelps' findings were generally consistent with Dr. Ginsburg's findings and with the medical evidence generally and because the ALJ agreed with Dr. Phelps' finding that Mr. Hinds' condition would impose additional environmental and postural limitations that Dr. Ginsburg did not note. [#11-2 at 21-22]. The ALJ afforded minimal weight to Dr. Chansky's medical opinion because the ALJ found it to be inconsistent with the medical evidence and because Dr. Chansky did not provide objective evidence to support her findings. [#11-2 at 22].

The ALJ first considered Dr. Ginsburg's opinion, as an examining physician, who examined the Plaintiff on April 18, 2017. *See* [#11-2 at 22]. Dr. Ginsburg first noted that Mr. Hinds reported a history of back pain and recurrent headaches which last for 30 to 40 minutes. *See* [#11-7 at 296-300]. Plaintiff reported that his headaches occurred for month-long periods twice a year, and that he has some relief with the drug Imitrex, while he must stop using Verapamil due to side effects. [*Id.* at 296-98]. As for back problems, Dr. Ginsburg noted that Plaintiff had back pain and "on occasion radicular pain and diffuse degenerative changes in his lumbar spine…." *See* [*id.* at 299]. Dr. Ginsburg provided further that Mr. Hinds was capable of walking long distances, though doing so caused back pain. In this examination, Dr. Ginsburg diagnosed Mr. Hinds with degenerative disease of the lumbar spine, and noted that the pain would limit him to handling 20 pounds occasionally and 10 pounds frequently. *See* [*id.*] Dr. Ginsburg did not note any environmental or postural limitations; indeed he expressly noted "Postural activities: No

limitations" in his report. *See* [*id.*]. In addition, Dr. Ginsburg indicated that the straight leg raising test was "negative in seated and supine bilaterally." [*Id.* at 299].

Dr. Phelps, a State Agency reviewing physician, completed a medical opinion upon reviewing Mr. Hinds' medical records, including Ginsburg's opinion. *See* [#11-3 at 61-86]. Dr. Phelps' conclusion was consistent with that of Dr. Ginsburg's finding that Mr. Hinds' chronic degenerative disc disease would limit him to light lifting and pushing and walking brief distances. *See* [*id.* at 70-72]. Dr. Phelps considered other evidence and concluded that while she accepted Dr. Ginsburg's overall diagnosis, Mr. Hinds indeed has postural limitations such that he "must periodically alternate sitting and standing to relieve pain and discomfort" and that he should "[a]void concentrated exposure" to hazards such as "machinery" and "heights." [*Id.*]. Because of the common conclusions and the addition of Dr. Phelps' extra limiting factors, the ALJ reasonably afforded more weight to Dr. Phelps' opinion than that of Dr. Ginsburg's. But even if the ALJ had given more weight to Dr. Ginsburg's findings, Dr. Ginsburg's conclusions regarding Mr. Hinds's limitations do not support a finding that Mr. Hinds met, equaled, or exceeded the Listing 1.04 or is otherwise disabled due to his back and/or spine. [#11-7 at 299].

Dr. Chansky, another examining physician, examined the Plaintiff about a month before Dr. Ginsburg and concluded that he was permanently disabled. [#11-7 at 284]. Dr. Chansky's conclusion is generally inconsistent with that of the other two doctors, both the examining and the State Agency physicians, considered above. Dr. Chansky made the same notes concerning Mr. Hinds' back pain and spinal disorders as Dr. Ginsburg, Dr. Phelps, and other medical professionals, but did not show additional or new findings which would support the conclusion that Mr. Hinds is permanently disabled. *See* [*id.* at 272-84]. No other medical professional who examined Mr. Hinds or observed his record and made conclusions regarding his back pain, found that his impairments

13

were such that he should be deemed permanently disabled. *See* [*id.* at 286-91, 296-99, 336-40]; *see also* [#11-3 at 61-86]. The inconsistency of this conclusion with the reports of the other medical professionals in the record supports the ALJ's decision to afford minimal weight to Dr. Chansky's opinion.

Accordingly, this court finds no error in the ALJ's weighing of the medical opinions. Further, I conclude that the ALJ did not err at step three.

### III. The RFC Assessment

A Plaintiff's RFC is the most work they can perform, and it must be consistent with the record as a whole and supported by substantial evidence. *See Howard v. Barnhart*, 379 F. 3d 945, 947 (10th Cir. 2004); SSR 96-8; *see also Ellison*, 929 F.2d at 536 (reiterating that the court will not reverse the ALJ's decision if supported by substantial evidence even if the evidence court could have reached a different conclusion). The Plaintiff challenges the ALJ's RFC assessment, asserting that the ALJ did not sufficiently consider all of Mr. Hinds' impairments, namely, his cluster headaches, and that it was not supported by substantial evidence in the record. [#15 at 7-9]. The Plaintiff argues further that the ALJ unjustifiably disregarded advice of the VE regarding the effects of the hypothetical limitations discussed at the hearing. [*Id.* at 9].

The ALJ is charged with reviewing the medical evidence of the record and deciding the RFC, while the vocational expert is limited to offering an opinion regarding possible vocation. *See* 20 C.F.R. § 404.1560; 404.1566(e); *Rutledge v. Apfel*, 230 F. 3d 1172, 1175 (10th Cir. 2000). Often, the ALJ will present the VE with many hypothetical questions to further inform her decision about a plaintiff's RFC; however, the VE's responses to the questions may not bind the ALJ's decision. The ALJ is not required to incorporate the facts of hypotheticals in their RFC determination, and such a decision will be upheld as long as it is supported by the evidence. *See*

*Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995). Even at this stage, it remains the responsibility of the plaintiff to show disability. *See Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

In this case, as explained above, the ALJ considered the various medical opinions presented to conclude that Mr. Hinds was not so severely impaired such that he is incapable of working, and her conclusion is supported by the record. The ALJ also relied upon what she was able to observe of Mr. Hinds during proceedings. *See* [#11-2 at 22]. Informed by the medical opinions, the ALJ observed that Mr. Hinds' behavior in the courtroom was consistent with the finding that he is impaired but not so much so that he is prevented from doing light work. *See* [*id.*] Although an ALJ may not rely solely on her personal observations to discredit a plaintiff's allegations, she may consider her personal observations in her overall evaluation of the claimant's credibility. *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (citing *Teter v. Heckler*, 775 F.2d 1104, 1106 (10th Cir. 1985) (holding that where other evidence corroborates claimant's pain as genuine, the ALJ may not reject claimant's allegations solely on basis of his demeanor); SSR 96–7p, 1996 WL 374186, at *8 (stating that ALJ may not accept or reject the claimant's allegations based solely on the ALJ's personal observation of claimant, but the ALJ should consider personal observations in overall evaluation of claimant's credibility)).

The medical record, together with the ALJ's observations from the hearing, supports the ALJ's conclusion that the Plaintiff's cluster headaches were not severe enough to prevent him from performing light work. *See* [*id.* at 19-20 (discussing the thin medical evidence concerning Plaintiff's cluster headaches). The ALJ determined that Mr. Hinds' cluster headaches do not reach the requisite level of severity because the way he went about treating them appears inconsistent with the level of severity he reported. *See* [*id.* at 20]. Her conclusion is due in part to the fact that

Mr. Hinds successfully treated his cluster headaches with sumatripan and with an injection of Imitrex. *See* [#11-7 at 262; #11-8 at 355]. Additionally, while Plaintiff reports that the cluster headaches are severe, he at one point refused to receive an injection when offered, and reported that he is able "get rid" of the headaches without mediation in addition to testifying that he can "shake it off" without medicine. [#11-7 at 262 (sought injection of sumatripan but refused because he did not want to inject himself); #11-2 at 43]. From this, the ALJ reasonably inferred that headaches, while severe, are not severe enough to be debilitating, because otherwise Mr. Hinds would not be able to get rid of them on his own, nor would we turn down relief in the form of medication when offered.

Therefore, I find no reversible error in the ALJ's RFC determination.

## CONCLUSION

For the reasons stated herein, the court hereby **AFFIRMS** the Commissioner's final decision.

DATED: November 26, 2018    BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge